The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 9, 2020

## 2020COA61

### No. 15CA0126, *People v. Rojas* — Crimes —Theft — Colorado Public Assistance Act — Food Stamps — Fraudulent Acts; Evidence — Res Gestae

A division of the court of appeals considers whether a trial
court may admit evidence of a subsequent misrepresentation of
income as res gestae evidence of theft by deception of food stamps.

Relying on *People v. Davalos*, 30 P.3d 841 (Colo. App. 2001),
the majority concludes that the defendant's subsequent
misrepresentation is admissible as res gestae evidence of the
defendant's mental state and intent to knowingly provide false
information on food stamp applications.

The dissent concludes that the trial court reversibly erred in
admitting this evidence as res gestae, and it directs attention to the
shortcomings of the common law res gestae doctrine.  C.A.R.

35(e)(3). The dissent explains that res gestae (1) is vague and unhelpful; (2) adds nothing to the rules of evidence; and (3) threatens to erode CRE 404(b). *See Zapata v. People*, 2018 CO 82, ¶ 70 (Hart, J., specially concurring) ("I have serious reservations about the continued appropriateness of the res gestae doctrine and believe that, in an appropriate case, this court should consider whether to join other jurisdictions that have abandoned the doctrine.").

COLORADO COURT OF APPEALS                                    **2020COA61**

Court of Appeals No. 15CA0126
Larimer County District Court No. 13CR1903
Honorable Daniel J. Kaup, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brooke E. Rojas,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE RICHMAN
Graham, J.*, concurs
Furman, J., dissents

Announced April 9, 2020

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     This case has returned to this court on remand from our supreme court.

¶ 2     In this case, a jury found defendant, Brooke E. Rojas, guilty of two counts of theft under the theft statute after she misrepresented her work income on a January 14, 2013, application for food stamps and then received food stamp benefits for six months.  A division of this court reversed the judgment of conviction.  The majority concluded that Rojas "could only be prosecuted under [section 26-2-305(1)(a), C.R.S. 2019, which criminalizes] the theft of food stamps by a fraudulent act," not under the general theft statute.  *People v. Rojas*, 2018 COA 20, ¶ 1 (*Rojas I*).  Judge Richman dissented from that determination and concluded that Rojas was properly convicted under the theft statute.  *Id.* at ¶ 66.

¶ 3     On review, the supreme court concluded that the "legislature didn't create a separate crime" of theft of food stamps by a fraudulent act "by enacting section 26-2-305(1)(a)."  *People v. Rojas*, 2019 CO 86M, ¶ 3.  Thus, it reversed the division's opinion and remanded the case to our court "to consider any unresolved issues raised by Rojas on direct appeal."  *Id.* at ¶ 28.

¶ 4    There are three issues that we must resolve in this opinion. Rojas contends that the trial court (1) abused its discretion by admitting, as res gestae, evidence that she misrepresented her work income on an August 9, 2013, application for food stamps, and therefore she is entitled to a new trial; (2) erred by allowing the prosecution to aggregate her thefts into two different aggregate counts under the theft statute; and (3) erred by not retroactively applying a 2013 amendment to the theft statute to her case.

¶ 5    The dissent addressed these additional arguments for reversal in the prior case. *See Rojas I*, ¶¶ 56-65 (Richman, J., dissenting).

¶ 6    A majority of this division now agrees with the result and analysis set forth in the dissent for the reasons explained below. Accordingly, the defendant's conviction is affirmed, and the case is remanded for resentencing and correction of the mittimus to reflect two class 6 felony convictions.

## I. Background

¶ 7    The jury heard the following evidence at trial:

- Rojas had originally applied to receive food stamps through the Larimer County Department of Human Services

2

(Department) in August 2012 after she was laid off from her job.

- In late December 2012, Rojas was hired as a restaurant manager, but she did not start working until January 1, 2013.

- Also in late December 2012, she received a reapplication form from the Department, and she filled out the form when she received it.

- Because she had not yet received any income from her new job as a restaurant manager, she reported on the form that she had no work income and no employer.

- She began working approximately sixty hours per week as a restaurant manager on January 1, 2013.

- On January 13, 2013, Rojas noticed that she had not mailed the application form back to the Department. She then signed and dated the application form and mailed it.

- Rojas received $1000 per month in food stamps from February 1, 2013, to July 31, 2013.

- During this same period, Rojas received over $29,000 in work income, and the Larimer County Department of Human Services sent monthly notices reminding Rojas that she was

required to report if her household's gross monthly income exceeded $3785.

¶ 8    Rojas acknowledged that if her monthly work income exceeded $3785, she would not be eligible for food stamps. But she believed this meant her net monthly work income, not her gross monthly work income. She recognized that her gross monthly income exceeded $3785 each month from February 1, 2013 to July 31, 2013. She never reported this to the Department.

¶ 9    In an August 9, 2013, application for food stamps, Rojas again represented that she had no work income. A Department employee questioned Rojas about the application. Rojas confirmed that the only household income came from student loans and financial aid, but she falsely stated she had no earned income.

¶ 10    Rojas was charged with one count of theft under the theft statute, section 18-4-401, C.R.S. 2012, applicable until June 2013, alleging that she had received food stamps between February 1, 2013, and June 1, 2013; and a second count of theft under section 18-4-401, C.R.S. 2013, alleging that she had received food stamps on July 1, 2013.

¶ 11     At trial, Rojas asked the court to add a lesser nonincluded offense instruction under section 26-2-305(2), which makes it a crime for a participant in the food stamp program not to report a change in that participant's financial circumstances that affects that participant's eligibility for food stamps. The prosecution agreed, and the court granted Rojas's request.

¶ 12     A jury found Rojas guilty of two counts of theft, and one count of violating section 26-2-305(2).

## II. Res Gestae

### A. Facts

¶ 13     As noted, Rojas misrepresented her work income on an August 9, 2013, application for food stamps, as she had done in January 2013. The prosecution did not specifically charge Rojas for the August misrepresentation. But the trial court admitted the August 9, 2013, application, over defendant's pretrial objection, as res gestae of the charged offenses.

¶ 14     During closing arguments, the prosecution relied on the evidence that Rojas had again misrepresented her work income on the August 9, 2013, application as proof that Rojas intentionally misrepresented her work income on the January 14, 2013,

5

application.  Rojas contends the trial court abused its discretion in allowing this evidence as res gestae.

## B.  Standard of Review

¶ 15    We review a district court's evidentiary rulings for an abuse of discretion.  *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).  A district court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.  *Id.*

¶ 16    If an argument is preserved by objection, we will reverse only if any error was not harmless.  *Hagos v. People*, 2012 CO 63, ¶ 12. That is, we reverse if the error "substantially influenced the verdict or affected the fairness of the trial proceedings."  *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

## C.  Applicable Law

¶ 17    Our supreme court has defined res gestae evidence as "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood."  *People v. Rollins*, 892 P.2d

6

866, 872-73 (Colo. 1995) (quoting *Woertman v. People*, 804 P.2d 188, 190 n.3 (Colo. 1991)).

¶ 18    When evidence is part of a continuous transaction that explains the setting in which the crime occurred, it is admissible as part of the res gestae.  Such evidence has as its purpose to "provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Davalos*, 30 P.3d 841, 843 (Colo. App. 2001) (quoting *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994)).  This evidence is "not subject to the general rule that excludes evidence of prior criminality." *Id.* (quoting *Quintana*, 882 P.2d at 1373).  And it is "[e]vidence of criminal conduct that occurs contemporaneously with or is part and parcel of the crime charged." *Callis v. People*, 692 P.2d 1045, 1051 n.9 (Colo. 1984).

## D.  Analysis

¶ 19    At trial, Rojas contended that she did not intentionally submit false information in the January application because she thought it was inquiring whether she had already received income from her job, or otherwise misunderstood the Department requirement.  But the false application submitted in August could not simply be

explained away as a misunderstanding of the food stamp requirements.

¶ 20 Financial applications that are unrelated to a charged crime are admissible as res gestae if they are evidence of the defendant's mental state and intent to make false statements. *Davalos*, 30 P.3d at 841.

¶ 21 In *Davalos*, the defendant was charged with theft after he lied about not owning real estate in an application for Aid to Families with Dependent Children. *Id.* at 843. His defense was that he made a mistake in filling out the application. *See id.* at 844. So the prosecution sought to admit evidence of unrelated applications that the defendant had filed in which the defendant also lied about not owning real estate, and the trial court admitted evidence of the unrelated applications as res gestae. *See id.* The division in *Davalos* concluded that evidence of the unrelated applications was res gestae because it was evidence of the defendant's intent and, thus, provided "the [jury] with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *Id.* at 843 (quoting *Quintana*, 882 P.2d at 1373).

¶ 22    Because Rojas's August application provided evidence of her mental state and intent to knowingly provide false information on food stamp applications, and it demonstrated that she had knowingly received a thing of value of another by deception, it was "part and parcel" of the crime charged.  *Callis*, 692 P.2d at 1051 n.9; *see also People v. Greenlee*, 200 P.3d 363, 366-67 (Colo. 2009) (holding that evidence of a plan is admissible under CRE 401 and 403 as circumstantial evidence of the defendant's mental state).

¶ 23    Furthermore, the defendant's additional act showed a pattern and practice that the jury was entitled to hear.  *See People v. Jaramillo*, 183 P.3d 665, 667-68 (Colo. App. 2008) (holding that evidence of the defendant's jealousy was admissible as res gestae evidence for an assault charge).  The evidence of her false application in August was properly admitted as res gestae.[1]

---

[1] The majority takes no position on the dissent's urging the supreme court to consider abolishing the res gestae doctrine. Nonetheless, we note the following regarding the application of the doctrine in this case to make certain the record is clear:

- The August 2013 application completed by Rojas could have been offered, and probably admitted, into evidence under CRE 404(b) as evidence of intent, pattern, or absence of mistake. Had it been admitted under the Rule, the procedural and

¶ 24    Since the evidence was admitted as res gestae, it was not error for the court to deny defendant's request for a limiting instruction. *See People v. Griffiths*, 251 P.3d 462, 467 (Colo. App. 2010) (holding that res gestae evidence can be admitted without a limiting instruction).

### III. Effect of 2013 Amendments to Theft Statute

¶ 25    Effective June 5, 2013, the General Assembly amended the theft statute to provide that a theft of at least $2000 or more but less than $5000 was classified as a class 6 felony, and a theft of $5000 or more but less than $20,000 was classified as a class 5 felony. Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196. Some of the alleged acts of theft by defendant took place before June 5, 2013; others took place after June 5, 2013.

---

substantive protections alluded to by the dissent would have been preserved.

- But the record in this case shows that, prior to the trial, the judge held proceedings where the admissibility of the document was raised and ruled on. The defendant objected to the document's admissibility, but the trial judge ruled initially that the document was relevant evidence, and later specifically ruled it was admissible as res gestae. Thus, unlike some res gestae evidence referenced in the dissent, this information was not suddenly or spontaneously sprung on defendant.

¶ 26    In an apparent recognition of the statutory amendment, the prosecutor ultimately charged Rojas with (1) one count relating to the alleged thefts of $3528 that occurred before June 5, 2013, and charged those as a class 4 felony under the provisions of the former statute; and (2) a second count relating to the alleged thefts of over $2000 that occurred after June 5, 2013, and charged those as a class 6 felony under the amended statute.

¶ 27    The jury was instructed on, and defendant was convicted of, two separate counts of theft: a class 4 felony for the thefts occurring before June 5, 2013, and a class 6 felony for the thefts occurring after June 5, 2013.  The trial court sentenced defendant to concurrent sentences of three years of probation on each count.

¶ 28    Defendant contends that the prosecution was required to aggregate the total amount of the thefts into one count because they occurred within a six-month period.  Defendant further contends that the classifications under the amended theft statute should be applied.  Had the amounts been aggregated and defendant charged in one count and convicted, they would have resulted in one conviction for a class 5 felony.

11

¶ 29    We agree with defendant's contention that the classifications under the amended theft statute should apply to her convictions. But we disagree with her remaining contentions.

¶ 30    Defendant was charged under section 18-4-401(4)(a) for committing theft twice or more within a period of six months. That statute permits, but does not require, the prosecution to aggregate the thefts and charge them in a single count. Because aggregation was not mandatory, the prosecution was not required to aggregate defendant's thefts into one count.

¶ 31    Defendant was convicted and sentenced after the June 2013 amendments to the theft statute. In *People v. Stellabotte*, 2018 CO 66, ¶ 36, the supreme court concluded that a defendant who committed thefts prior to the 2013 amendment was entitled to benefit from the amendment at sentencing insofar as it reduced the classification of the offenses. We apply the rule announced in *Stellabotte.* Thus, defendant's conviction for acts occurring before the June 5, 2013, amendment should be reduced to a class 6 felony.

IV.  Conclusion

¶ 32    Because we perceive no error in the admission of evidence or the charge of two separate crimes of theft, we affirm the convictions and remand for resentencing and correction of the mittimus to reflect two class 6 felony convictions.

JUDGE GRAHAM concurs.

JUDGE FURMAN dissents.

JUDGE FURMAN, dissenting.

¶ 33    I conclude that the trial court erred in admitting evidence of Rojas's August 9, 2013, application for food stamps as res gestae evidence of the charged offenses and that this error was not harmless. Therefore, I respectfully dissent from the majority's decision to affirm Rojas's theft conviction. I also write separately to encourage our supreme court to abolish the res gestae doctrine for several reasons. In my view, the doctrine (1) is vague and unhelpful; (2) adds nothing to the rules of evidence; and (3) threatens to erode CRE 404(b). *See Zapata v. People*, 2018 CO 82 ¶¶ 70-79 (Hart, J., specially concurring).

## I. Rojas's Theft Conviction

¶ 34    A jury found Rojas guilty of two counts of theft, under the theft statute, after she misrepresented her work income on a January 14, 2013, application for food stamps and then received food stamps for six months.

¶ 35    Rojas again misrepresented her work income on an August 9, 2013, application for food stamps. The prosecution did not charge Rojas for this misrepresentation. Even so, the trial court admitted

14

evidence of the August 9, 2013, application as res gestae of the charged offenses.

## A. Res Gestae Evidence Defined

¶ 36    Our supreme court has defined res gestae evidence as "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." *People v. Rollins*, 892 P.2d 866, 872-73 (Colo. 1995) (quoting *Woertman v. People*, 804 P.2d 188, 190 n.3 (Colo. 1991)).

¶ 37    Res gestae evidence has also been defined as evidence "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).  And, it has been described as "[e]vidence of criminal conduct that occurs contemporaneously with or is part and parcel of the crime charged." *Callis v. People*, 692 P.2d 1045, 1051 n.9 (Colo. 1984).

## B. The August 9, 2013, Application

¶ 38    The prosecution charged Rojas with two counts of theft under

section 18-4-401(1), C.R.S. 2019.  Under this section, a "person

commits theft when he or she knowingly obtains, retains, or

exercises control over anything of value of another without

authorization or by threat or deception" and intends "to deprive the

other person permanently of the use or benefit of the thing of

value." § 18-4-401(1).  The prosecution's first count alleged that

Rojas had committed theft of food stamps between February 1,

2013, and June 4, 2013.  And the second count alleged that Rojas

had committed theft of food stamps between June 5, 2013, and

July 31, 2013.

¶ 39    Before trial, Rojas moved to exclude evidence of her August 9,

2013, application for food stamps — in which she again

misrepresented that she had no work income — because she

submitted this application more than a week after committing the

charged crimes.  The trial court denied her motion because it found

that the August 9, 2013, application was admissible as res gestae of

the charged crimes.

¶ 40    At trial, the prosecution introduced evidence that, in the

August 9, 2013, application for food stamps, Rojas again

misrepresented that she had no income. And during closing arguments, the prosecution relied on the evidence that Rojas had again misrepresented her work income on the August 9, 2013, application as proof that Rojas intentionally misrepresented her work income on the January 14, 2013, application.

C. The Error in Admitting the August 9, 2013, Application

¶ 41   I believe the trial court erred in admitting evidence of the August 9, 2013, application as res gestae of the charged offenses.

¶ 42   According to the prosecution, the charged crimes were completed on July 31, 2013. Thus, evidence of the August 9, 2013, application was not contemporaneous with, linked in time or circumstances with, or part and parcel of, the charged crimes. *See Quintana*, 882 P.2d at 1373; *Callis*, 692 P.2d at 1051 n.9. It also is not so closely connected to the charged crimes that it constitutes a part of the same transaction. *See Rollins*, 892 P.2d at 872-73. That is, the prosecution could complete the story of the charged crimes to the jury without evidence of the August 9, 2013, application. *See Quintana*, 882 P.2d at 1373.

¶ 43   Although the People contend that the "evidence of [Rojas's] representations of $0 in job income in August was a critical part of

17

the timeline because it prompted the entire investigation of this case," this does not mean that evidence of the August 9, 2013, application is res gestae evidence. Res gestae evidence is evidence of acts or words that are integral, natural, or necessary parts of the crime, not of the investigation of the crime. *Quintana*, 882 P.2d at 1373; *see also Rollins*, 892 P.2d at 872-73.

## D. Division Cases

¶ 44    The majority relies on *People v. Davalos*, 30 P.3d 841 (Colo. App. 2001), and *People v. Jaramillo*, 183 P.3d 665, 667-68 (Colo. App. 2008), for the proposition that the August 9 application was admissible as res gestae because it was evidence of (1) Rojas's mental state, *see Davalos*, 30 P.3d at 843; and (2) a pattern and practice by Rojas that the jury was entitled to hear, *see Jaramillo*, 183 P.3d at 667-68. I respectfully disagree with the divisions' reasoning in *Davalos* and *Jaramillo*.

¶ 45    In *Davalos*, the defendant was charged with theft after he lied about not owning real estate in an application for Aid to Families with Dependent Children. 30 P.3d at 843. His defense was that he made a mistake in filling out the application. *See id.* at 844. So, the prosecution sought to admit evidence of unrelated applications

18

that the defendant had filed in which the defendant also lied about not owning real estate. *Id.* The trial court admitted evidence of the unrelated applications as res gestae. *See id.* The division in *Davalos* concluded that evidence of the unrelated applications was res gestae because it was evidence of the defendant's intent and, thus, provided "the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *Id.* (quoting *Quintana*, 882 P.2d at 1373).

¶ 46 In *Jaramillo*, the defendant was charged with second degree assault after he struck his wife in the face. 183 P.3d at 667. The defendant's wife testified that the defendant was "always very angry and very accusative" of her during their marriage and exhibited "extreme jealousy" and "extreme possessiveness" toward her. *Id.* The division in *Jaramillo* concluded that this testimony was admissible as res gestae because it was "part and parcel of the criminal episode for which defendant is charged." *Id.* at 668.

¶ 47 In my view, it is difficult to square *Davalos* and *Jaramillo* with our supreme court's definition of res gestae, expansive though that definition may be, and CRE 404(b). Under our supreme court's

19

precedent, acts and words — such as unrelated applications or a history of jealous and accusatory behavior — that are not "so closely connected" with the charged crime that they "constitute a part of the transaction" are not admissible as res gestae. *Rollins,* 892 P.2d at 872-73; *Quintana,* 882 P.2d at 1373.

¶ 48 Instead, such other acts or words that are not part of the criminal transaction itself are admissible only under CRE 404(b). *Quintana,* 882 P.2d at 1372-73; *see also* CRE 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

E. The Error Was Not Harmless

¶ 49 I also believe that the trial court's error in admitting evidence of the August 9, 2013, application as res gestae was not harmless. *See Hagos v. People,* 2012 CO 63, ¶ 12 (An error is harmless unless it "substantially influenced the verdict or affected the fairness of the trial proceedings." (quoting *Tevlin v. People,* 715 P.2d 338, 341-42 (Colo. 1986))). "Put differently, [a defendant] is entitled to reversal if

20

there is 'a reasonable probability that the error contributed to [his] conviction.'" *Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009) (quoting *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001)); *People v. Zapata*, 2016 COA 75M, ¶ 38, *aff'd*, 2018 CO 82.

¶ 50    The only issue at trial was whether Rojas obtained the food stamps by deception.  Rojas testified that she misrepresented her work income to the Department by mistake.  But during its closing argument, the prosecution relied on the August 9, 2013, application as proof that Rojas misrepresented her work income intentionally. Because of this, I believe that there is a reasonable probability that the trial court's admission of the August 9, 2013, application contributed to Rojas's conviction.  *Yusem*, 210 P.3d at 469.

¶ 51    The majority points out that the August 9, 2013, application could have been properly "admitted[] into evidence under CRE 404(b) as evidence of intent, pattern, or absence of mistake."  *Supra* ¶ __ n.1.  But that did not happen.  The trial court admitted this evidence only as res gestae.  Because of this, we do not have a limiting instruction directing the jury to consider the August 9, 2013, application only for a permissible, nonpropensity purpose. *See Kaufman v. People*, 202 P.3d 542, 552-53 (Colo. 2009) (noting

that, if a trial court admits other act evidence under CRE 404(b) and *Spoto*, it must instruct the jury on the limited purpose for which the jury may consider the evidence). Consider how the trial court explained its ruling regarding the admissibility of this evidence after closing argument:

> [I]n the Court's ruling about the [August 9 application], prior to trial the Court clearly found and ruled that it was not 404(b). Even when defense counsel tried to submit a limiting instruction later at the time of trial on that issue, the Court again found specifically [it] is not 404(b). [The] Court found it's res gestae and that could show a continuing pattern and what was in the defendant's mind as that continued on past the charged time frame that ended July 31, 2013.

¶ 52    I also note that the People do not ask us to affirm the trial court's ruling on the ground that the August 9, 2013, application would have been admissible under CRE 404(b). *See, e.g.*, *People v. Allen*, 199 P.3d 33, 35 (Colo. App. 2007) (declining to address contentions the defendant did not raise in his opening brief on appeal).

¶ 53    Accordingly, I believe that the trial court's error substantially influenced the verdict, *see Hagos*, ¶ 12, constituting reversible error.

## II. The Supreme Court Should Address the Continued Viability of the Res Gestae Doctrine

¶ 54 I also write to ask our supreme court, should it review this case, to reconsider the scope and viability of the res gestae doctrine. *See* C.A.R. 35(e)(3).

¶ 55 Nearly a century ago, Professor Wigmore said of res gestae:

> The Latin expression "res gestae" or "res gesta," literally "things done" or "thing transacted," has long served as a catchword . . . . And frequently also its indefiniteness has served as a basis for rulings where it was easier for the judge to invoke this imposing catchword than to think through the real question involved. The phrase is antiquated. By modern judges it is being gradually discarded. It is superfluous, and serves only to obscure the logic of the rules. It should be left to oblivion.

Black's Law Dictionary (11th ed. 2019) (quoting John H. Wigmore, *A Students' Textbook of the Law of Evidence* 279 (1935)).

¶ 56 But the modern trend Professor Wigmore predicted in 1935 has yet to make its way to Colorado. Nearly a century later, res gestae lives on in our jurisprudence.

¶ 57 Members of the supreme court have recently expressed reservations about "the continued appropriateness of the res gestae doctrine" and have suggested that, "in an appropriate case, [the

supreme] court should consider whether to join other jurisdictions that have abandoned the doctrine." *Zapata*, 2018 CO 82, ¶ 70 (Hart, J., specially concurring). This case presents a perfect opportunity for our supreme court to address the continued viability and scope of this doctrine which, I believe, has long outlived its usefulness.

¶ 58 For three reasons, I submit that Colorado should abolish the res gestae doctrine. First, the doctrine is vague and unhelpful. Second, it adds nothing to the rules of evidence. And third, it threatens to erode CRE 404(b).

### A. "Res Gestae" is Vague and Unhelpful

¶ 59 Res gestae is a term that often "obscure[s] what [it] purport[s] to describe." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 190.9, Westlaw (8th ed. database updated Jan. 2020). As Colorado case law now defines res gestae, it is difficult to determine what, if any, limits the doctrine has.

¶ 60 As noted, our supreme court has described res gestae as evidence that is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the

jury." *Quintana*, 882 P.2d at 1373 (quoting *Williford*, 764 F.2d at 1499).

¶ 61    But what, exactly, is an act that forms an "integral and natural part of an account of the crime"? *Id.* How closely "linked" must the evidence be? And what does it mean to be "linked in time and circumstances"? *See Zapata*, ¶ 58 (quoting *People v. Skufca*, 176 P.3d 83, 86 (Colo. 2008)).

¶ 62    Unsurprisingly, a test with such blurry boundaries has led to disparate results. Indeed, divisions of this court have held a wide spectrum of evidence admissible as res gestae evidence, including

- evidence that a suspect fled to Michigan several weeks after committing the charged offense, *People v. Gee*, 2015 COA 151, ¶¶ 28-30;

- evidence that a husband charged with assault against his wife was "always very angry and very accusative" during their marriage, *Jaramillo*, 183 P.3d at 667-68;

- evidence that a defendant charged with robbery of an elderly woman also robbed a shoe store later that day, *People v. Lovato*, 179 P.3d 208, 212-13 (Colo. App. 2007);

- evidence that a defendant charged with lying on an application for certain aid had, at some point in the past, lied on a different application for aid, *Davalos*, 30 P.3d at 843-44;

- evidence that a defendant charged with sexual assault on a child had "large amounts of money" and had encouraged the victim to "deal[] drugs on his behalf," *People v. St. James*, 75 P.3d 1122, 1124-25 (Colo. App. 2002); and

- evidence that a defendant charged with murder had committed a burglary three days before the murder, *People v. Lucas*, 992 P.2d 619, 624 (Colo. App. 1999).

*See also* H. Patrick Furman & Ann England, *The Expanding Use of the Res Gestae Doctrine*, 38 Colo. Law. 35, 36-39 (June 2009) (collecting cases).

¶ 63    Res gestae began as a theory of relevance for admitting evidence of contemporaneous acts necessary for the jury to understand the complete story of the crime.  I worry that the doctrine has metastasized beyond its original purpose and now gives trial and appellate courts a license for "result-oriented

decision-making." *See* Edward J. Imwinkelried, *The Second Coming of Res Gestae: A Procedural Approach to Untangling the 'Inextricably Intertwined' Theory for Admitting Evidence of an Accused's Uncharged Misconduct,* 59 Cath. U. L. Rev. 719, 729 (2010) ("The looseness of the doctrine allows the courts to engage in 'result-oriented' decision-making.") (citation omitted).

## B. Res Gestae Adds Nothing to the Rules of Evidence

Not only is the res gestae doctrine vague and unhelpful, it is also unnecessary. The rules of evidence already set out a framework for introducing what we now call "res gestae" evidence.

Evidence that is admitted as "res gestae" will usually, if not always, be relevant evidence under CRE 401 because it will have some "tendency to make the existence" of a consequential fact "more probable or less probable than it would be without the evidence." CRE 401. After all, our supreme court has clarified that res gestae evidence still must be relevant under CRE 401 to be admissible. *Skufca,* 176 P.3d at 86.

If res gestae evidence, like all other evidence, must be relevant to be admissible, I can see no reason for recognizing the doctrine in the first place. *See Zapata,* ¶ 76 (Hart, J. specially concurring)

27

("There is . . . good reason for this court, in an appropriate case, to consider whether the [res gestae] doctrine has been rendered obsolete by modern rules of evidence."); *see also People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009) ("[T]here is no need to consider an alternative theory of relevance, such as res gestae, where the evidence is admissible under general rules of relevancy."). And if the "res gestae" evidence is actually evidence of a defendant's "other crimes, wrongs, or acts," it should have to satisfy CRE 404(b).

C. Res Gestae Allows Parties to Circumvent CRE 404(b) and *Spoto*

¶ 67    Most important, res gestae also threatens to erode the substantive and procedural requirements of CRE 404(b) and *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

¶ 68    Res gestae now encompasses any "uncharged misconduct evidence that is intertwined with the charged conduct," *Zapata*, ¶ 58, and any uncharged act that is "necessary to complete the story of the crime for the jury," *Skufca*, 176 P.3d at 86. And our supreme court has indicated that when "evidence is admitted as res gestae evidence, it is not subject to the general rule excluding evidence of prior criminality." *Id.*

¶ 69    Based on this precedent, two things are now apparent about res gestae: (1) res gestae includes any uncharged misconduct evidence that could be considered as "intertwined" with the charged offenses, *Zapata*, ¶ 58 (citing *Skufca*, 176 P.3d at 86); and (2) res gestae evidence is exempt from the substantive and procedural requirements of CRE 404(b), *id.* I have serious concerns that res gestae, as it is applied in Colorado case law, provides parties and trial courts with an easy way to circumvent CRE 404(b). *See Zapata*, ¶ 75 (Hart, J., specially concurring) (noting that "the label 'res gestae'" too often "short-circuit[s] the evaluation called for in Rule 404(b)"). That is exactly what happened here.

¶ 70    After all, much other act evidence is "linked in time and circumstances" or "intertwined" with the charged offenses. So why would parties go through the cumbersome procedures required under CRE 404(b) and *Spoto* when they can admit the same evidence as res gestae simply by showing that it is, somehow, "linked in time and circumstances" with the charged offense? *See Zapata*, ¶ 58 (majority opinion) (quoting *Skufca*, 176 P.3d at 86); *id.* at ¶ 79 (Hart, J., specially concurring) (noting the "expansive use of the [res gestae] doctrine in the trial courts").

¶ 71    To be sure, some of the evidence that is currently admitted as res gestae would still be admitted under CRE 404(b) for a permissible, nonpropensity purpose. But CRE 404(b) sets forth important procedural and substantive safeguards that are absent when a party introduces evidence under a res gestae theory.

¶ 72    CRE 404(b) requires the proponent of other acts evidence to give pretrial notice to the opposing party that it intends to introduce the evidence. It also requires the proponent to demonstrate, step by step, why the evidence is relevant without relying on a propensity inference. *See Spoto*, 795 P.2d at 1318. These procedures afford the trial court opportunity to weigh the admissibility of evidence before the heat of trial and give the opposing party opportunity to request a limiting instruction. *See* CRE 105. And they will lead to a more developed record about why the trial court admitted or excluded the evidence. In contrast, when a party introduces other-act evidence under a res gestae theory, it needs only to convince the trial court that the evidence is in some way "linked in time and circumstances" with the charged offenses. *Quintana*, 882 P.2d at 1373 (quoting *Williford*, 764 F.2d at 1499).

¶ 73    In my view, any evidence of a defendant's "other crimes, wrongs, or acts" must satisfy CRE 404(b) and *Spoto*, whether or not the evidence is "linked in time and circumstances" with the charged offense.  *Accord United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing [Fed. R. Evid. 404(b)] altogether. . . .  We see no reason to relieve the government and the district court from the obligation of selecting from the myriad of non-propensity purposes available to complete most any story.").

¶ 74    I also note that scholars have routinely criticized the res gestae doctrine on similar grounds.  *See* Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence* § 17:14, Westlaw (7th ed. database updated July 2019); Kenneth W. Graham, Jr., *Federal Practice and Procedure: Federal Rules of Evidence* § 5246, Westlaw (2d ed. database updated Aug. 2019); David P. Leonard, *New Wigmore on Evidence: Evidence of Other Misconduct* § 5.4 (2d ed. 2019) ("When courts characterize uncharged misconduct as intertwined with or intrinsic to the charged activities, they often fail to take seriously the dangers associated with misconduct

31

evidence."); Milton Hirsch, *"This New-born Babe an Infant Hercules":*
*The Doctrine of "Inextricably Intertwined" Evidence in Florida's Drug*
*Wars*, 25 Nova L. Rev. 279, 313 (Fall 2000) (Res gestae is
"[u]nsatisfactory, first, because it is obscure and indefinite, and
needs further definition and translation before either its reason and
its scope can be understood; and secondly, because the very
looseness and obscurity lend too many opportunities for its
abuse. . . . [T]he result is only to make rulings on evidence
arbitrary and chaotic, when we ignore the correct purposes of
admission and substitute an indefinite and meaningless phrase of
this sort." (quoting 1 John Henry Wigmore, *A Treatise on the System*
*of Evidence in Trials at Common Law* § 218, at 721 (1904)));
Imwinkelried, 59 Cath. U. L. Rev. at 729-30 (noting the extensive
scholarly criticism of res gestae).

¶ 75     And, several jurisdictions have limited the doctrine, *see United*
*States v. Green*, 617 F.3d 233, 239-49 (3d Cir. 2010); *Bowie*, 232
F.3d at 926-29; *State v. Nelson*, 791 N.W.2d 414, 419-24 (Iowa
2010), while others have abandoned it, *see United States v. Gorman*,
613 F.3d 711, 717-20 (7th Cir. 2010); *State v. Fetelee*, 175 P.3d
709, 735 (Haw. 2008); *State v. Kralovec*, 388 P.3d 583, 587 (Idaho

2017) ("[W]e decline to perpetuate the use of the res gestae doctrine in Idaho."); *People v. Jackson*, 869 N.W.2d 253, 268 (Mich. 2015) ("[T]here is no 'res gestae exception' to [Mich. R. Evid.] 404(b)."); *State v. Rose*, 19 A.3d 985, 988 (N.J. 2011) ("[T]he doctrine of res gestae no longer has vitality in light of the formal *Rules of Evidence*."). I believe Colorado should join these latter jurisdictions.

### III. Conclusion

¶ 76 In sum, res gestae is vague, unnecessary, and threatens to erode CRE 404(b). For these reasons, I ask our supreme court, should it review this case, to join the growing number of jurisdictions that have abolished the doctrine. *See* C.A.R. 35(e)(3).

¶ 77 And, because I conclude that the trial court reversibly erred by admitting evidence of the August 9, 2013, application as res gestae, I respectfully dissent from the majority opinion affirming Rojas's judgment of conviction.