The PEOPLE of the State of
Colorado, Petitioner,

v.

Marvin Andrew ROLLINS, Respondent.

No. 93SC682.

Supreme Court of Colorado,
En Banc.

March 20, 1995.

As Modified on Denial of Rehearing
April 10, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Atty. Gen., Eric V. Field, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

David F. Vela, Colo. State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted the prosecution's petition for certiorari to review *People v. Rollins*, No. 91CA1985 (Colo.App. Aug. 19, 1993) (not selected for official publication).[1] The court of appeals ordered a new trial. We reverse and remand this case to the court of appeals with directions to vacate the order for a new trial and to reinstate the judgment of conviction and sentence imposed by the trial court.

## I

The respondent, Marvin Andrew Rollins (defendant), was charged with sexual assault on a child pursuant to section 18–3–405, 8B C.R.S. (1986 & 1994 Supp.).[2] The information filed on June 20, 1989, alleged that the defendant sexually assaulted T.B., who was ten-years old at the time of the assault. A second information, filed on July 6, 1989, charged the defendant with sexually assaulting T.K., who was twelve-years old at the time of the assault.

In pretrial proceedings in both cases, the prosecution moved to introduce evidence of the defendant's sexual assault against T.K. in T.B.'s trial and the defendant's sexual assault against T.B. in T.K.'s trial. The prosecution sought to introduce this evidence as similar transaction evidence pursuant to CRE 404(b) and section 16–10–301, 8A C.R.S. (1986 & 1994 Supp.), for the limited purpose of proving identity, modus operandi, intent, absence of mistake or accident, or knowledge.[3] The trial court conducted a hearing on the prosecution's motion. The defense's theory of the case was that T.B. and T.K. fabricated the charges and that sexual assaults did not occur. At the conclusion of the hearing, trial court ruled that the similar acts evidence relating to the sexual assault on T.K. would not be admissible in T.B.'s case be-

---

1. The following issues are before us for review on certiorari:

    1. In a case of sexual assault on a child, whether evidence of prior uncharged sexual assaults by the defendant perpetrated on the victim is admissible without limitation as *res gestae* evidence.

    2. If not admissible as *res gestae* evidence, whether the court of appeals erred in finding plain error in the admission of the evidence where such evidence is still admissible under CRE 404(b) or § 16–10–301, 8A C.R.S. (1986 & 1994 Supp.), as proof of common plan, scheme, or design.

2. Section 18–3–405(1), which defines sexual assault on a child, states:

    (1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

    Section 18–3–401(4), 8B C.R.S. (1994 Supp.), which defines sexual contact, provides:

    (4) "Sexual contact" means the knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

3. In February 1990, the prosecution filed an additional motion to introduce evidence of the defendant's alleged sexual assault against another child, S.S., as evidence of a similar transaction. Other acts evidence concerning this child was never pursued by either party at trial.

cause the evidence was more prejudicial than probative under CRE 403. The court stated that it would confront the similar transaction evidence associated with T.K.'s case at a later date since the prosecution was going to trial first in T.B.'s case.

■ New defense counsel was appointed at the defendant's request, and on July 25, 1991, defense counsel filed a motion to consolidate the charges for trial. The prosecution did not oppose the motion, but stated that there had not been a hearing on the hearsay testimony of prosecution witnesses who were witnesses to statements made by T.K.[4] The defendant's new counsel waived objection to the admission of the hearsay statements. The motion for consolidation was granted on August 12, 1991, the date set for the trial of the charges made by T.B. The issue of the admissibility of similar transaction evidence in the consolidated trial was not raised and no objection was made by defense counsel at anytime before or during the trial.

At the consolidated trial, defense counsel, in his opening statement, outlined his trial strategy and described an uncharged incident of sexual assault by the defendant against T.K. In his opening statement, defense counsel said:

> You will hear that [T.B.] has made three prior allegations of sexual abuse, one at age five, one at age seven and one at age eight. One of them had to do with a Bryce, a person by the name of Bryce who was her great aunt's live-in boyfriend who

tried to touch her and she pretended to sleep and roll over and that purportedly happened in New York. The second time was at age seven when a babysitter at age 40 allegedly fondled her in Alabama. And the third one was at age eight when an Uncle Charley—we have no details, she's somewhat evasive about it, but apparently he rubbed her butt according to her. Now, those things are of interest not only because of them being prior accusations of some kind of sexual abuse but for another reason and we will point this out during the trial and you'll hear it during the trial because it relates to [T.K.].

> [T.K.] will probably testify, if she does not she has previously said that at one point [the defendant] tried to get in her shorts one night when she was sleeping in bed and she avoided it by rolling over like Bryce. She has further alleged that in June of 1988 and October of 1988 on two occasions a boy at school tried to force her to have oral intercourse, much like the statement made by [T.B.] in regard to [the defendant]. And you will see the parallels run between the statements of [T.K.] and [T.B.] and how they cross over and become intermingled in this entire web that occurs and brought about the filing of the case.

After the opening statements, the jurors were excused from the courtroom and a record was made on the admissibility of evidence of the victims' prior sexual conduct:

> [PROSECUTING ATTORNEY]: ... I think 18–3–407 [5] is extremely specific on

---

4. T.K. made out-of-court statements to three members of the Colorado Springs Police Department who testified at trial. Section 13–25–129, 6A C.R.S. (1987 & 1994 Supp.), is a statutory exception to the hearsay rule that permits the admission of certain statements made by children who have been victims of sexual abuse provided that the safeguards in the statute have been followed. *People v. Diefenderfer*, 784 P.2d 741, 746 (Colo.1989). A child's out-of-court statements of sexual abuse are admissible if the statements are reliable and the child either testifies at trial or is unavailable to testify but there is corroborative evidence supporting the out-of-court statements. *People v. District Court*, 776 P.2d 1083, 1086 (Colo.1989). The court of appeals concluded that the hearsay statements were admissible. Because the hearsay issue is not before us for review on certiorari, we will not address it.

5. Section 18–3–407 provides in relevant part:

(1) Evidence of specific instances of the victim's prior or subsequent sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall be presumed to be irrelevant except:
(a) Evidence of the victim's prior or subsequent sexual conduct with the actor;
(b) Evidence of specific instances of sexual activity showing the source or origin of semen ... or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.
(2) In any criminal prosecution under sections 18–3–402 to 18–3–405 ..., if evidence, which is not excepted under subsection (1) of this section, of specific instances of the victim's

what it says the evidence of specific instances ... is not relevant unless ... certain procedures [are] followed, the written motion with the affidavit, whether it's going to be used to show her credibility which is one of the things it actually goes into. Even in case law that has come out of 18–3–407, the credibility of the witness, whether she knew about sexual things or not from these prior accusations or actual touches or not, it is still something that comes under 18–3–407. That is extremely specific in that there has to be a hearing beforehand with a ruling on whether that can be brought into the courtroom in front of a jury in particular. And that's my main objection, that the procedure wasn't followed and all of a sudden it's being talked about that it certainly goes towards that it's accusations. I mean I think even in opening statement she's been touched she says by all these three people. I certainly can't retry those if they, you know—some of them weren't even ever given to the Department of Social Services. So it certainly is going to appear like they may have been false accusations and I think that's what the statute goes to....

....

[DEFENSE COUNSEL]: I think, Your Honor, when we look at the entire perspective of the case, especially as it relates to the interrelationship between [T.K.], the crossing over of stories that we believe will be shown, ... my effort would be to attempt to show that [T.K.] was aware of the allegation made by [T.B.] that she had been asleep at one point and had rolled over, at least made that accusation. That is a mirror image practically of something that [T.K.] says about [the] defendant. [T.K.] says that ... in June and I believe October of 1988 that a young man tried to get her to perform oral sex upon him. That allegation from [T.K.] becomes important because this is essentially the allegation being made by [T.B.]. And what I want to explore on cross-examination is the extent to which these children shared this information between them because I think that brings into question the credibility of each of those particular stories as it relates to those two particular kind of allegations.

....

THE COURT: [The purpose of introducing evidence of uncharged acts] is to show a sharing of knowledge of each other's prior alleged sexual contacts.

[DEFENSE COUNSEL]: A sharing of—a sharing of information or stories, true or false, Your Honor.... I certainly should be permitted to explore the basis by which they reached these stories and to show the interrelationship between the two girls as to the nature of those two stories.... [T]hey essentially adopt each other's stories to that extent.

....

THE COURT: ... I'm satisfied that the testimony which [defense counsel] seeks to elicit from either an independent witness to whom either or both of the children may have spoken or from the children themselves is based upon an independent belief from the evidence and/or from the discovery that [defense counsel] has that he may ask the questions and may get a positive answer with regard to statements that were made by the children either to each other or to a therapist, that the statements

prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults is to be offered at trial, the following procedure shall be followed:

(a) A written motion shall be made at least thirty days prior to trial, ... to the court and to the opposing parties stating that the moving party has an offer of proof of the relevancy and materiality of evidence of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults which is proposed to be presented.

....

(c) ... [T]he court shall ... set a hearing to be held in camera prior to trial....

....

(e) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim is relevant to a material issue to the case, the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted.
§ 18–3–407, 8B C.R.S. (1986 & 1994 Supp.).

fall outside the scope of 18–3–407 in that they are not allegations which are enumerated in the statute and that a limiting instruction is appropriate. I'm going to limit the jury's consideration to the purposes [defense counsel] has stated, first, to either witness's knowledge of sexual matters and, second, to a sharing of any information between the two. And I'll give them a cautionary instruction now before we begin the testimony and I'll also tell them that I'm going to give them a written Instruction which limits them. It will not only tell them what they can use the information for but what they can't use it for and that is in any way to consider whether or not the allegations made were true.... And obviously [the prosecution's] objection is noted for the record....

After the jury returned to the courtroom, the trial judge gave the jurors the following limiting instruction:

[Defense counsel] in his opening statement referred to some allegations by one or both of the alleged victims in this case concerning prior sexual contact not involving any allegations against [the defendant]. I'm going to admit the testimony concerning those allegations for a limited purpose only and there are two purposes for which I'm admitting it. First, is to show either of the witnesses' knowledge of sexual matters in general and, second, is to show any sharing of information which might have taken place between these two alleged victims and for no other purposes than those two purposes.

T.B. testified that the defendant sexually assaulted her on June 4, 1989. During cross-examination, defense counsel questioned T.B. about her conversations with T.K. regarding the sexual assault against T.K.[6] Defense counsel also developed the evidence of uncharged acts of sexual assault in an attempt to discredit T.B.'s version of the sexual assault incident.

T.K.'s testimony was that the defendant sexually assaulted her four times between March 1 and June 6, 1989. During defense counsel's cross-examination of T.K., defense counsel elicited details of three uncharged incidents from T.K. He additionally questioned her concerning the statements she made to Detective Bentley in regard to these events. Defense counsel further asked her whether T.B. had ever confided in T.K. that T.B. had been touched in an inappropriate manner by other persons.

At the conclusion of the trial, instruction No. 11 was given to the jury, and defense counsel did not object. Instruction No. 11 states in relevant part:

### INSTRUCTION NO. 11

During the course of the trial the Court admitted certain evidence for a limited purpose.

At that time you were instructed not to consider such evidence for any purpose other than the limited purpose or purposes for which it was admitted.

That evidence was as follows:

1. Prior allegations of sexual contact by one or both of the alleged victims in this case was admitted for the limited purposes of showing:

(a) either of the alleged victim's knowledge of matters or,

(b) a sharing of information between the two alleged victims.

The Court instructed you at that time that this is not a trial as to whether or not the prior incidents actually occurred and

---

6. [DEFENSE COUNSEL]: Did you tell [T.K.] that Bryce had tried to do that to you when you were five and that you pretended to be asleep and rolled over like she did?
[T.B.]: No.
[DEFENSE COUNSEL]: ... Did [T.K.] tell you how [the defendant] held her when he supposedly tried to French kiss her in the garage?
[T.B.]: No.
[DEFENSE COUNSEL]: [T.K.] told you, didn't she, that [the defendant] had touched her vagina and tried to make her touch his penis? She told you that story?
[T.B.]: Yes.
[DEFENSE COUNSEL]: And you also told [your social worker] that Uncle Charley had rubbed against your butt in Alabama, do you recall that?
[T.B.]: Yes.
Following this colloquy, the court gave the jury a limiting instruction as to the purpose for which these questions were admitted.

that whether they occurred or not is irrelevant to your determinations of the facts of this case and should not be considered by you in any way for that purpose.

The jury found the defendant guilty of both counts of sexual assault on a child, and the defendant was sentenced to five years in the Colorado Department of Corrections.

The court of appeals held that the trial court committed plain error in allowing T.K. to testify to uncharged sexual assaults by the defendant. The reversal was based on the trial court's failure to follow the procedures for the admission of similar transaction evidence mandated by section 16-10-301 and *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).[7] We disagree.

The defense made no objection and opened the door to the admission of the uncharged sexual assaults against T.K. The admission of the sexual history of T.B. and T.K. was part of the defendant's theory of the case. The trial court was not required, *sua sponte*, to issue a limiting instruction or comply with the procedural requirements mandated by section 16-10-301, CRE 404(b), or *Stull* and its progeny.

## II

### A

The sexual assault against T.B. allegedly occurred on June 4, 1989, in the garage of the defendant's home. T.B. testified the defendant touched her face and chest, and tried to touch her vagina through a slit in her pants. She also told the jury that the defendant was unsuccessful in touching her vagina because she moved away, but that he again tried to put his finger through the hole in her pants, and succeeded. According to T.B., the defendant's wife, Candy, then entered the

---

7. In *Stull*, we articulated the following safeguards regarding the admissibility of similar transaction evidence:

   First, the prosecutor should advise the trial court of the purpose for which he offers the evidence. Secondly, if the court admits such evidence, it should *then and there* instruct the jury as to the limited purpose for which the evidence is being received and for which the jury may consider it. Thirdly, the general charge should contain a renewal of the instruction on the limited purpose of such evidence. Lastly, the offer of the prosecutor and the instructions of the court should be in carefully couched terms: they should refer to "other transactions," "other acts," or "other conduct," and should eschew such designations as "similar offenses," "other offenses," "similar crimes," and so forth.

   *Stull*, 140 Colo. at 284-85, 344 P.2d at 458.
   Section 16-10-301, which governs the admissibility of similar transaction evidence in sexual assault cases, states:

   (1) In criminal prosecutions for sexual assault, as defined in section 18-3-402, 18-3-403, or 18-3-404, C.R.S., or in criminal prosecutions for an unlawful sexual offense, as defined in section 18-3-411, C.R.S., or in criminal prosecutions for first degree murder, as defined in section 18-3-102(1)(b), C.R.S., in which the underlying felony on which such first degree murder charge is based is the commission of sexual assault in the first or second degree as prohibited by section 18-3-402 or 18-3-403, C.R.S., or the commission of a class 3 felony for sexual assault on a child as provided in section 18-3-405(2), C.R.S., the prosecution may, subject to the provisions of this part 3, introduce evidence of other similar acts or transactions of the defendant for the purpose of showing a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent.

   (2) If the prosecution intends to introduce evidence of similar acts or transactions as provided in subsection (1) of this section, the prosecutor shall advise the trial court of the purpose for which evidence of similar acts or transactions is offered. The burden shall be on the prosecution to show the relevancy of evidence if objection to introduction of said evidence has been made. The trial court shall determine whether or not the evidence offered is relevant and, if relevant, whether or not the prejudice which would result to the defendant by the introduction of the evidence outweighs the evidentiary value of the evidence.

   (3) The trial court shall, at the time of the reception into evidence of similar acts or transactions and again in the general charge to the jury, direct the jury as to the limited purpose for which the evidence is admitted and for which the jury may consider it. The court in instructing the jury, and the parties when making statements in the presence of the jury, shall use the words "similar act or transaction" and shall at no time refer to "similar offenses", "similar crimes", or other terms which have the same connotations.

   (4) Before admitting evidence of similar acts or transactions, the court must find that the people have introduced sufficient evidence against the defendant to constitute a prima facie case warranting submission of the case to the jury on the evidence presented other than that of similar acts or transactions.

garage and the defendant removed his finger.

After Candy left, the defendant pulled his pants down and exposed his penis. T.B. testified the defendant forced her to perform oral sex on him. T.B. testified that Candy came back into the garage and that the defendant pulled his pants up and went into the house with T.B.

During cross-examination, defense counsel questioned T.B. about her discussions with T.K. regarding the alleged sexual assaults. Defense counsel then developed the similar transaction evidence involving T.K. to discredit T.B.'s version of the alleged sexual assault by the defendant. Following cross-examination, the trial judge gave the jury a limiting instruction regarding the purposes for which evidence of prior sexual conduct was admitted.[8]

### B

The sexual assault against T.K. that was charged in the information occurred sometime between June 1, and June 6, 1989, when the defendant was visiting T.K. in her home. T.K. testified that, while she and the defendant were in the kitchen, he pulled her close and placed her hand on his crotch, over his clothing. T.K. also said the defendant put his hand on her crotch, over her clothing, and rubbed it. T.K. protested, but the defendant ignored her. She testified the defendant said he wanted to make love to her, but she refused. T.K.'s brother testified that when he entered the kitchen the defendant pushed T.K. away and stated to her, "Don't tell anybody about this."

At the consolidated trial, T.K. testified, without objection, to three other sexual assaults by the defendant. T.K. testified that when she and the defendant were wrestling, the defendant got on top of her and kissed her on the lips. Although no specific time frame was established for the incident, it occurred sometime after the defendant moved into T.K.'s neighborhood in March 1989.

T.K. testified the second incident occurred sometime between March 1, 1989, and early June 1989, when the defendant grabbed and "french kissed" her in his garage.

The third uncharged assault allegedly occurred in late May 1989. T.K. spent the night at the home of the defendant and his wife, Candy. She said she had a bad dream and went to the bedroom of the defendant and Candy to tell Candy about the dream. T.K. testified the defendant followed her back into her bedroom, got in bed behind her, and kissed her. According to T.K., the defendant tried to unzip her pants, but she rolled over and he left the bedroom.[9]

### III

■ Petitioner contends that evidence of the three uncharged incidents of sexual assault by the defendant against T.K. is admissible without limitation because it was part of the *res gestae* of the charged sexual assault by the defendant against T.K. We disagree.

■ *Res gestae* evidence is "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly

8. The trial judge stated:
   [L]et me repeat the instruction which I gave you previously. [Defense counsel] has just asked some questions of T.B. with regard to an incident allegedly involving a person named Bryce, a person named Ben and a person named Charley. Those questions and answers were admitted by me for a limited purpose to show, first, the witness's knowledge of any sexual matters and, second, a sharing of any information between the two witnesses and for no other purposes. This is not a trial as to whether or not these prior incidents actually occurred. Whether they occurred or not is irrelevant in this case and should not be con-

sidered by you in any way for any of—for that purpose. To the extent you find any one or all of those relevant for the limited purposes I've set forth above, you may consider those for those two purposes and with that limitation only. You may give them whatever weight if any you deem appropriate.

9. During cross-examination, defense counsel elicited details of the three uncharged incidents of sexual assault on T.K. He also questioned her regarding statements about the uncharged incidents she made to T.B. and to a detective who investigated the case.

understood." *Woertman v. People*, 804 P.2d 188, 190 n. 3 (Colo.1991) (quoting *Martinez v. People*, 55 Colo. 51, 53–54, 132 P. 64, 65 (1913)). Evidence that is contemporaneous with and serves to illustrate the character of the crime charged is *res gestae* evidence. *Woertman*, 804 P.2d at 190 n. 3. *Res gestae* evidence need not meet the procedural requirements of *Stull* to be admissible. *People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo. 1990); *Callis v. People*, 692 P.2d 1045, 1051 n. 9 (Colo.1984). For *res gestae* evidence to be admissible, it must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice. *Czemerynski*, 786 P.2d at 1109.

Evidence that is independent of the charged offense is governed by CRE 404(b),[10] which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The three uncharged sexual assaults on T.K. allegedly occurred over a three-month period. The uncharged incidents were neither contemporaneous with nor provided a background for the offense charged. All of the incidents occurred under different circumstances and in different locations. No specific dates were established for the uncharged incidents, except that one of the incidents occurred in late May of 1989. Evidence of dissimilar incidents spanning a three-month time frame cannot be characterized as *res gestae* evidence.[11]

## IV

■ Petitioner asserts that the three uncharged assaults against T.K. by the defendant should have been admitted under CRE 404(b) and section 16–10–301. The court of appeals concluded that the trial court committed plain error in admitting T.K.'s testimony of the three uncharged assaults by the defendant because the trial court did not conduct the balancing tests required by *People v. Garner*, 806 P.2d 366 (Colo.1991), and *People v. Spoto*, 795 P.2d 1314 (Colo.1990), and did not give any limiting instructions to the jury. We disagree with the court of appeals.

■ The trial court was not required to issue a limiting instruction or comply with the procedural requirements of section 16–10–301, CRE 404(b), or *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), because defense counsel first introduced, and opened the door to admitting, the prior uncharged sexual assaults against T.K. as part of the theory of defense.[12] In response to the ac-

---

10. In *People v. Quintana*, 882 P.2d 1366, 1373 n. 12 (Colo.1994), we noted, *"[r]es gestae* evidence is the antithesis of CRE 404(b) evidence. Where CRE 404(b) evidence is independent from the charged offense, *res gestae* evidence is linked to the offense."

11. In *Woertman*, the defendant was charged with three counts of sexual assault on two young boys. The prosecution introduced evidence of over fifty acts of sexual contact on the boys. We noted that the prosecution originally offered the evidence as part of the *res gestae* of the transaction, but the prosecution later conceded that it was similar transaction evidence. *Woertman*, 804 P.2d at 190 n. 3. We stated, "[t]he evidence here of over fifty acts of sexual assault spanning a long time frame cannot be characterized as *res gestae.*" *Id.*

   Although there were fewer uncharged acts in the present case, and the uncharged acts evidence involved only one victim, the principle of *Woertman* is analogous. Evidence of a number of distinct sexual assaults that occur over a long

period of time cannot constitute *res gestae* evidence.

12. In *People v. Kailey*, 662 P.2d 168 (Colo.1983), the defendant was charged with felony child abuse for injuries he caused to his child in September, 1980. The defendant argued that evidence of the child's hospitalization in July, 1980 should not have been admitted because the district court had not complied with the procedural requirements of *Stull* and *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979). During the trial, the defendant did not object to the admission of evidence about the July hospitalization, and did not request a limiting instruction at the time of the testimony or when the case was submitted to the jury.

   We rejected the defendant's contention and stated:

> The defendant's theory of defense apparently was that the September injury was related to the July injury, which was the result of a traumatic birth. Under these circumstances, it

tions of defense counsel, the trial judge gave limiting instructions concerning the limited purpose for which the jury could consider evidence of uncharged acts against the defendant and others. Defense counsel did not make a contemporaneous objection to any of the trial judge's instructions, and failed to tender any alternative instructions at the conclusion of the evidence.[13]

The defense's theory of the case was to discredit the victims' testimony, and to demonstrate the inconsistencies of T.K.'s and T.B.'s stories. Defense counsel brought the uncharged acts to the attention of the jury in his opening statement and in his cross-examination of the victims to attempt to prove that the charges were fabricated. The theory of defense was that the uncharged acts, and the sexual background and history of T.B. and T.K., established that both T.B. and T.K. had experience beyond their years and knowledge of sexual matters based on their prior

accusations of sexual assaults. Defense counsel's trial strategy caused evidence to be admitted on uncharged sexual assaults, which may not now serve as reversible error. *See People v. Collins*, 730 P.2d 293, 305 (Colo. 1986) ("We hold that any error was error injected by the defendant as a matter of trial strategy, and the defendant may not now be heard to complain.").[14]

Section 16–10–301 and CRE 404(b) govern the admission of similar transaction evidence offered by the prosecution.[15] Section 16–10–301 does not apply to the introduction of similar transaction evidence when offered by defense counsel as part of trial strategy and the defense's theory of the case. However, CRE 403 and 404(b) govern the defense use of similar transaction evidence by persons other than the defendant. *See People v. Miller*, 890 P.2d 84, 91–92 (Colo.1995); *see also People v. Quintana*, 882 P.2d 1366, 1374 (Colo.1994) (interpreting CRE 403); *People*

would have been totally inappropriate for the district court to have attempted to limit the defendant's introduction of evidence concerning the July incident by imposing the *Honey* and *Stull* requirements. The defendant cannot on appeal change theories and prevail on the notion that the evidence which he sought to introduce was improperly admitted.
*Kailey*, 662 P.2d at 170.

In the present case, defense counsel constructed a theory of the case in which he sought to permit the jury to hear all evidence of alleged sexual assaults against T.B. and T.K. whether or not they involved the defendant. Defendant cannot now claim that the evidence he sought to introduce was improperly admitted.

13. An accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action. *People v. Girtman*, 695 P.2d 759, 761 (Colo.App.1984).

When no contemporaneous objection to the asserted error is made at trial, appellate review is limited to determining whether the error or defect constitutes plain error. *Wilson v. People*, 743 P.2d 415, 419 (Colo.1987). Under plain error review, a decision may be reversed only if, "after review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Kruse*, 839 P.2d 1, 3 (Colo.1992).

14. The ABA Standards for Criminal Justice, The Defense Function, provide that defense counsel

determines trial strategy and tactical matters. Standard 4–5.2(b) states:

The decision on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.
I ABA Standards for Criminal Justice, The Defense Function, Standard 4–5.2(b) (2d ed. 1980 & 1986 Supp.).

In the present case, defense counsel made the tactical decision to attempt to discredit the victims by introducing evidence of prior uncharged incidents and the sexual backgrounds of T.B. and T.K.

15. Section 16–10–301(1) states that the *prosecution* may "introduce evidence of other similar acts or transactions of the defendant for the purpose of showing a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent." § 16–10–301(1). If the *prosecution* intends to introduce similar transaction evidence, the *prosecution* shall advise the trial court of the purpose for the admission of the evidence. § 16–10–301(3). Under subsection (3), the burden shall be on the *prosecution* to show the relevancy of the evidence if the defense objects to its admission. *Id.* Section 16–10–301(4) provides that, prior to admitting similar transaction evidence, the court must find that the *prosecution* has introduced sufficient evidence against the defendant to constitute a prima facie case warranting submission of the case to the jury on evidence other than similar transaction evidence. § 16–10–301(4).

*v. Ibarra*, 849 P.2d 33, 38 (Colo.1993) (discussing CRE 404(b)). Under the facts and the instructions to the jury limiting the evidence, the trial court did not commit plain error in admitting evidence of prior sexual conduct at the request of the defendant. *In People v. Flowers*, 644 P.2d 916 (Colo.1982), we said:

> When a defendant offers [similar transaction] evidence for defensive reasons, the concerns which gave rise initially to the exclusionary rule are no longer relevant. In offering this evidence, the defendant has chosen to assume the risk of any jury prejudice it might engender in return for whatever exculpatory value it may have. Consequently, the safeguards set forth in *Stull* and *Honey* are inapplicable when the defendant is the proponent of similar transaction evidence, and a more lenient standard of admissibility can be applied.

*Id.* at 919 (quoting *People v. Bueno*, 626 P.2d 1167, 1169 (Colo.App.1981)).

Accordingly, we reverse and remand this case to the court of appeals with directions to vacate the order for a new trial and to reinstate the judgment of conviction and sentence imposed by the trial court.

