The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 25, 2020

## 2020COA100

## No. 17CA0444, *People v. Yachik* — Evidence — Res Gestae

A division of the court of appeals considers whether the trial
court erroneously admitted evidence that defendant repeatedly
subjected the victim to extreme physical abuse as res gestae for the
charged sexual assaults.  This evidence was admitted at trial on the
theory that it provided the jury with context for the family dynamics
and background against which the charged crimes occurred.
However, the division concludes that it was irrelevant, prejudicial,
and encouraged the jury to convict defendant based upon the
impermissible inference that he had a bad character.  Therefore, the
division concludes that the trial court abused its discretion by
admitting the physical abuse evidence as res gestae.

The division also considers two issues that are likely to arise on remand: the admission of expert testimony about "negative grooming" and the prosecution's theme in closing argument that defendant "groomed the jury" throughout the trial.

The division concludes that, should the prosecution seek to admit such expert testimony in defendant's new trial, the trial court shall make specific findings on the record regarding the relevance and reliability of the evidence before deciding whether to admit it. Finally, comments that defendant "groomed the jury" are improper and shall not be permitted.

Accordingly, the division reverses and remands for a new trial.

COLORADO COURT OF APPEALS 2020COA100

Court of Appeals No. 17CA0444
Larimer County District Court No. 15CR1475
Honorable Gregory M. Lammons, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeremy Neal Yachik,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE ROMÁN
Tow and Pawar, JJ., concur

Announced June 25, 2020

Philip J. Weiser, Attorney General, Erin K. Grundy, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jeremy Neal Yachik, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse against his biological daughter, S.Y. *See* § 18-3-405.3(1), (2), C.R.S. 2019. Specifically, he contends that the trial court erred by erroneously admitting evidence that he subjected S.Y. to physical abuse. This evidence was proffered by the prosecution — and accepted by the trial court — as res gestae of the family dynamics and background against which the charged crimes occurred. Additionally, defendant contends that the court erroneously admitted unreliable and irrelevant expert testimony about "negative grooming," without making specific findings regarding its admissibility. How the prosecution used the physical abuse evidence and the expert testimony about grooming in its case-in-chief and closing argument form the basis of defendant's third contention: prosecutorial misconduct. In particular, defendant challenges the prosecution's multiple comments made during closing argument that defendant "groomed the jury" throughout the trial.

1

¶ 2 For the reasons that follow, we conclude that defendant's convictions must be reversed and the case remanded for a new trial.

## I. Background

¶ 3 According to the People's evidence, the first charged sexual assault happened around August 2010 after defendant came home from the hospital, where his son was being treated for a severe illness. S.Y., who was in the eighth grade, had stayed home from school that day. Defendant told S.Y. he heard a radio show about daughters who wanted to date their fathers before asking her to lie down on his bed and pull down her pants. He then inserted a vibrator into her vagina. She removed it and put her pants back on. Defendant got on top of her and threatened to rape her if she told anyone what happened. Then he took a nap.

¶ 4 The second charged incident occurred in 2011 or 2012, when S.Y. was in ninth grade. She was cleaning dishes at the kitchen sink when defendant came up behind her and put one hand on her breasts and another hand near her vagina. S.Y. was fully clothed at the time. Defendant stopped when she told him she thought someone was coming downstairs.

¶ 5    S.Y. told defendant's ex-girlfriend about these incidents around August 2014. S.Y. was living with the ex-girlfriend, who was involved in an ongoing custody dispute with defendant over their son.

¶ 6    The People charged defendant with two counts of sexual assault on a child. At trial, the People introduced extensive and graphic evidence of the physical abuse defendant perpetrated against S.Y. and asserted that he groomed her and the jury to get away with his wrongdoing. They painted a picture of a controlling defendant and a fearful victim.

¶ 7    The jury found defendant guilty as charged. He received consecutive sentences of sixteen years to life on each charge.

## II.    Res Gestae Evidence

¶ 8    Defendant contends that the trial court erroneously admitted evidence that he repeatedly subjected S.Y. to "horrific acts of child abuse" as res gestae for the charged sexual assaults. He specifically asserts that this evidence was not only irrelevant and highly prejudicial, but it encouraged the jury to convict him of the charged sexual assault crimes based on prior misconduct and "perceived bad character."

3

¶ 9     The People respond that the trial court properly admitted this

evidence as res gestae because it helped the jury understand (1) the

control defendant exercised over S.Y.; (2) why she lied to protect

him; and (3) why she delayed reporting despite frequent contact

with law enforcement and human services.

¶ 10    Because we agree this was improperly admitted as res gestae

evidence, we reverse and remand.

### A.     Relevant Facts

¶ 11    In 2013, defendant's ex-girlfriend sent a video to law

enforcement showing defendant hitting and kicking S.Y. for taking

carrots from the refrigerator without permission (the carrot video).

The carrot video prompted an investigation that resulted in

defendant being charged with, and pleading guilty to, misdemeanor

child abuse.

¶ 12    In 2016, the prosecution in the sexual assault case filed a

pretrial motion seeking to admit as res gestae the carrot video and

other physical abuse evidence collected during the 2013 child abuse

investigation.  According to the prosecution, the physical abuse

evidence was "part and parcel of th[e] evolving [sexual assault]

criminal episode."  The sexual abuse allegations and the physical

abuse "involve[d] the same period of time" and "[a]ny observations of the defendant's behavior towards [the victim] during and near that time period [were] crucial to give context and explain the entire criminal episode."

¶ 13     Defense counsel objected because "the child abuse allegations [were] not integral to the charges," were "not relevant," and "the minimal probative value [was] vastly outweighed by their prejudicial impact." Instead, the prosecution was seeking to "convict Defendant of the current charges based upon his perceived bad character and alleged prior bad acts." Defense counsel pointed out that the child abuse involved "physical punishment or deprivations for bad behavior," not punishments to procure sex. And, in the sexual assault case filings, there were no similar allegations that defendant sexually assaulted S.Y. because she behaved badly or as a form of punishment. Moreover, according to defendant, the "story" of the sexual assaults could be understood without any reference to the physical abuse. Therefore, defense counsel contended that the evidence should not be admitted under res gestae, CRE 403, or any other theory.

¶ 14    The district court admitted the evidence as res gestae.  In a written order, it ruled that

> [t]he family dynamics and interactions between the Defendant and alleged victim are relevant to give context to the jury.  They are relatively contemporaneous in time and involve the same actors.  That said, it is not proper for the People to introduce any evidence regarding charges or convictions that arose out of L13M1456 [the child abuse case].  Whether the Defendant wishes to do so is his decision.  The Court notes that in the Defendant's Motion for Specific Discovery, he asserts that L13M1456 contains exculpatory information related to the charged offenses.  It is inconsistent to now assert that the two cases are not relevant to one another.

The court did not address Rule 403 in its written ruling.

¶ 15    At trial, S.Y. testified extensively about the physical abuse that defendant perpetrated against her "almost daily" during the years that she lived with him.  At the prosecutor's prompting, she detailed for the jury how defendant would force her to eat hot sauce concoctions, zip tie her hands behind her back and lock her in a dark room for hours, kick her, beat her, choke her, spray her eyes with police department grade pepper spray, deprive her of food, and force her to endure extreme exercise without rest.  She also

6

described the scars she still had from those experiences and the stomach problems that still caused her pain.

¶ 16   Defendant's ex-girlfriend also testified that defendant physically abused S.Y. "[a]lmost on a daily basis." While she described many of the same incidents of abuse that S.Y. had, she also described how S.Y. was forced to sleep outside and was hit with "a spatula, wooden spoons, [and a] belt." She even testified that the "abuse was getting so severe that [she] was afraid [defendant] was going to kill [S.Y.]."

¶ 17   At the close of evidence, the parties discussed a limiting instruction on the res gestae. Although such an instruction was not required, the court was "convinced in this case it is appropriate . . . because we've heard so much about the child abuse." So the court gave the following instruction:

> The Defendant is not charged with child abuse in this case. The evidence you heard related to the allegations of physical abuse of [S.Y.] has been admitted for the limited purpose of providing the jury with a full and complete understanding of the events surrounding the charged crimes and the context in which the charged crimes occurred.

¶ 18    In closing argument, the prosecutor reminded the jury of the physical abuse evidence:

> And I know the defense, they will say, think about how crazy it is that a guy would come home from dropping his kid off at the hospital and commit this and take a nap. But keep in mind, you are not thinking and analyzing his actions from a rational person such as yourself. You've got to think about this from the perspective of someone who wants to commit that sexual assault on a child and would do the behaviors that you saw on that [carrot] video and do the behaviors that are described. You can't look at that in a, well, I wouldn't do that, because you wouldn't do the rest of it.

¶ 19    The prosecutor implored the jury to watch the carrot video during its deliberations and asked it to "[l]ook at that evidence, think about what this girl went through, think about what she told you and described," and find defendant guilty.

### B.    Standard of Review and Applicable Law

¶ 20    "We review the admission of evidence for an abuse of discretion." *People v. Trujillo*, 2014 COA 72, ¶ 60. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 21   "All relevant evidence is admissible unless otherwise provided by constitution, statute, or rule."  *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009) (citing CRE 402).  Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.* (quoting CRE 401).  But relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice" or "if it is used to prove the character of a person in order to show that he acted in conformity with that character on a particular occasion."  *Id.* (citing CRE 403, 404(b)).

¶ 22   Evidence of other crimes, wrongs, or acts cannot be introduced to show a person acted in conformity with his or her bad character.  CRE 404(b); *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  "This rule is based upon the fear that the jury will use evidence that the defendant has committed other bad acts to convict the defendant of the charged offense."  *People v. Quintana*, 882 P.2d 1366, 1372 (Colo. 1994).  "'Other act' evidence, however, generally occurs at different times and under different circumstances from the charged offense."  *Id.*  By contrast,

9

"[e]vidence that is contemporaneous with and serves to illustrate the character of the crime charged" does not fall under CRE 404(b), but rather is res gestae evidence. *People v. Rollins*, 892 P.2d 866, 873 (Colo. 1995).

¶ 23    Res gestae evidence "provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred, including events closely related in time and nature to the charged offense." *People v. Martinez*, 24 P.3d 629, 633 (Colo. App. 2000); *see also Quintana*, 882 P.2d at 1373 ("Evidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred."). Res gestae is "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." *Rollins*, 892 P.2d at 872-73 (quoting *Woertman v. People*, 804 P.2d 188, 190 n.3 (Colo. 1991)).

¶ 24     Res gestae evidence need not meet the procedural

requirements of Rule 404(b) but is instead admissible if it is

relevant and if its probative value is not substantially outweighed

by the danger of unfair prejudice.  *People v. Czemerynski*, 786 P.2d

1100, 1109 (Colo. 1990).[1]

## C.     Analysis

¶ 25     We are not persuaded that the physical abuse evidence was

admissible as res gestae of the charged sexual assaults because the

incidents are not "inextricably intertwined," *People v. Coney*, 98

P.3d 930, 933 (Colo. App. 2004), such that the physical abuse

evidence was "necessary to complete the story" of the sexual

---

[1] Defendant argues that res gestae is a "discredited" doctrine that
has been abrogated by the Colorado Rules of Evidence.  However,
our supreme court has acknowledged and analyzed the res gestae
doctrine in numerous cases.  *See, e.g.*, *Zapata v. People*, 2018 CO
82, ¶¶ 58-60; *People v. Quintana*, 882 P.3d 1366, 1373 (Colo. 1994).
*But see Zapata*, ¶ 76 ("There is . . . good reason for this court, in an
appropriate case, to consider whether the doctrine [of res gestae]
has been rendered obsolete by modern rules of evidence.  It is a
vague and nearly standardless concept that is applied too
expansively to admit otherwise inadmissible evidence.") (Hart, J.,
specially concurring).  Because we are bound to follow supreme
court precedent, we decline defendant's invitation to reconsider the
doctrine in this case.  *People v. Harmon*, 2019 COA 156, ¶ 3 n.1.

assaults for the jury, *People v. Miranda*, 2014 COA 102, ¶ 47 (citation omitted).

### 1. Admissibility as Res Gestae

¶ 26    The prosecutor elicited testimony throughout defendant's trial about the extreme physical abuse that S.Y. endured. According to the People, this evidence was relevant to show the family dynamics and interactions between defendant and S.Y. and also to explain why S.Y. delayed reporting.[2]

¶ 27    But the physical abuse evidence was not critical to the jury's understanding of the charged crimes because nothing in the record linked those incidents in time or circumstance. Indeed, S.Y. testified about the sexual assaults without making any reference to physical abuse. In response to the prosecutor's question about whether she feared physical abuse if she told anyone about the vibrator incident, S.Y. answered "[n]o, I did not." Instead, she believed she would be in "big trouble" if she told anyone, meaning she would "just be grounded."

---

[2] The prosecution did not seek to admit the physical abuse evidence for any of these specific purposes under CRE 404(b); however, we discuss Rule 404(b) in greater detail *infra* Part II.C.2.

¶ 28     The physical abuse evidence certainly gave the jury a clearer picture of the violence and volatility S.Y. suffered at home, but the jury did not need to know about the pepper spray, hot sauce concoctions, choking, and food deprivation to understand the "story" of the sexual assaults. This conclusion is made more apparent because there is no evidence S.Y. was physically abused in connection with the sexual assaults (i.e., to procure sex, to punish her for resisting sexual advances, or to secure her silence). *Cf. People v. Mosley*, 2019 COA 143, ¶ 37 (*cert. granted* Mar. 30, 2020) (describing res gestae as evidence that is "generally so intertwined with the time and circumstances of the offense that its exclusion would leave a void in the account"). Instead, S.Y. was punished for alleged lying, poor communication, and not doing her chores.

¶ 29     The prosecution also suggested at trial that the ongoing threat of physical abuse might have explained why S.Y. delayed reporting the sexual assaults. *Cf. People v. Rojas*, 2020 COA 61, ¶ 43 (Furman, J., dissenting) ("Res gestae evidence is evidence of acts or words that are integral, natural, or necessary parts of the crime, not of the investigation of the crime."). But when S.Y. was asked why

she had not reported earlier, she provided various reasons, including that she "didn't know why," she must have "forgotten" to mention it, she did not know what would happen to herself and her little brother, she was not sure where she would live, she did not want to ruin defendant's relationship with his ex-girlfriend, she was ashamed, and defendant told her not to say anything.

¶ 30    Thus, rather than being "an integral and natural part of an account of [the] crime" or "necessary to complete the story of the crime for the jury," *People v. Abu-Nantambu-El*, 2017 COA 154, ¶ 39 (quoting *People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009)), *aff'd*, 2019 CO 106, the physical abuse evidence described specific instances of defendant's prior bad acts and showcased his bad character at various times and of a dissimilar nature to the charged crimes. The physical abuse was extrinsic to the charged sexual assaults and, as such, cannot be characterized as res gestae. *See Rollins*, 892 P.2d at 873 (concluding that defendant's three uncharged sexual incidents against victim were not res gestae in sexual assault trial because they occurred under different circumstances and in different locations than the charged conduct).

¶ 31    Contrary to the People's assertions, the situation here is unlike those in *Quintana*, *Mosley*, *Miranda*, and *Rojas*.  In each of those cases, res gestae was admissible because it related to the charged crime and filled an evidentiary gap without which the jury might be left confused.

¶ 32    In *Quintana*, 882 P.2d at 1373-74, the supreme court considered whether three statements the defendant made about killing people were admissible in his murder trial.  The court concluded the statements were res gestae of the charged crimes because they were made during and immediately after the murder, were "all linked in time to a single criminal episode," "form[ed] a natural part of the criminal episode as a whole," and "serve[d] to illustrate the character of defendant's actions."  *Id.* at 1374.  Specifically, the statements allowed the jury to "view the criminal episode in context and to draw appropriate inferences from the evidence."  *Id.*

¶ 33    In *Mosley*, a division of this court affirmed the admission as res gestae of evidence showing that defendant was involved in an altercation in a strip club before the charged assault in a parking lot.  2019 COA 143.  "Importantly, the two incidents were estimated

15

to have taken place between ten and twenty minutes apart, and the evidence was relevant to establish the character of Mosley's actions." *Id.* at ¶ 38. That is, the evidence showed not only why the defendant left the club, but also why he was angry and aggressive when he encountered the victims, whom he believed were part of the same group he confronted inside the club. *Id.* at ¶¶ 33, 38.

¶ 34 And in *Miranda,* ¶ 41, the defendant challenged the admission as res gestae of seven instances showing that he had groomed the victim and engaged in escalating sexual behaviors with her. The prosecutor argued that this evidence "help[ed] illustrate for the jury the relationship between [Miranda] and the victim, and the ongoing sexualized grooming behavior of [Miranda] that played into, and set the stage for, the crimes charged against him." *Id.* at ¶ 43. Without such evidence, the jury might be left with "the mistaken impression that the two instances charged as crimes occurred out of the blue." *Id.* A division of this court concluded the evidence was admissible because the charged offenses and grooming acts occurred over "approximately the same two-year period" and "showed 'a highly sexualized relationship as initiated by the defendant," which was "probative of his intent." *Id.* at ¶¶ 51-52. And the res gestae

16

showed a "clear pattern of repeated criminal and sexual conduct," including "rewards and punishment based on compliance with [defendant's] sexual demands." *Id.* at ¶ 53 (citation omitted); *see also People v. Rudnick*, 878 P.2d 16, 18-19 (Colo. App. 1993) (upholding admission of res gestae evidence of defendant's heated argument prior to a traffic altercation, which resulted in the defendant firing at, and killing, the driver of the other vehicle).

¶ 35 And finally, in *Rojas*, ¶ 13, the defendant contended that the trial court erroneously admitted res gestae of a false application for food stamps in her trial for making another false application. A majority of the division disagreed, concluding that the res gestae was probative of the defendant's "mental state and intent to knowingly provide false information on food stamp applications, and it demonstrated that she had knowingly received a thing of value of another by deception," and so was "'part and parcel' of the crime charged." *Id.* at ¶ 22 (quoting *Callis v. People*, 692 P.2d 1045, 1051 n.9 (Colo. 1984)).

¶ 36 This case is distinguishable from each of those cases. The physical abuse evidence does not fill in any missing pieces in the "story" of the sexual assaults nor does it assist the jury in drawing

appropriate inferences from the evidence. For instance, there is no evidence here of "a highly sexualized relationship" between defendant and S.Y. or escalating sexual demands or conduct. *Cf. Miranda*, ¶¶ 51-52. Additionally, there is no evidence that defendant punished S.Y. based on her compliance (or lack thereof) with his sexual demands, and S.Y. denied fearing physical abuse if she told anyone about the sexual assaults. And, unlike in *Rojas*, the People do not assert, and the evidence does not support, that the physical abuse evidence provided a motive or intent for the sexual assaults. To the contrary, S.Y. and defendant's ex-girlfriend testified that the physical abuse was punishment for S.Y.'s other, unrelated bad behaviors.

¶ 37     For all these reasons, we conclude that the trial court abused its discretion by admitting the physical abuse evidence as res gestae.

2.     Harmless Error

¶ 38     Where, as here, an error is preserved by a contemporaneous objection, we review it for harmlessness. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, reversal is warranted if the error affects the substantial rights of the parties, meaning that it

"substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)); *see also Zapata v. People*, 2018 CO 82, ¶ 61.

¶ 39     In making this determination, we consider "the specific nature of the error committed and the nature of the prejudice or risk of prejudice associated with it." *Zapata*, ¶ 62 (quoting *Crider v. People*, 186 P.3d 39, 43 (Colo. 2008)).

¶ 40     For guidance on whether this error is harmless, we look to the Colorado Supreme Court's *Zapata* decision. In that case, the defendant appealed his convictions for attempted first degree murder and first degree assault against a convenience store clerk. *Id.* at ¶ 2. He asserted that the trial court erroneously admitted res gestae of his "threatening, harassing, and physically abusive behavior" toward his ex-girlfriend and others close to her to show his jealousy and motive to attack the victim. *Id.* at ¶¶ 15, 57. The supreme court concluded, however, that any error was harmless. The "record reveal[ed] strong evidence" of defendant's guilt, including incriminating photographs, text messages, and surveillance video footage. *Id.* at ¶ 66. "[G]iven the strength of the other evidence against Zapata and the implausibility of [his]

'innocent bystander' theory of the case, [the supreme court did] not believe the uncharged misconduct was so prejudicial as to substantially influence the verdict or impair the fairness of the trial." *Id.* at ¶ 67.

¶ 41    Conversely, in this case, there exists a very real probability that the physical abuse evidence "substantially influence[d] the verdict" and "impair[ed] the fairness of the trial." *Id.*  Indeed, the way the prosecution used the physical abuse evidence in its closing highlights its harmfulness and the impropriety of its admission. Multiple times, the prosecutor implored the jury to revisit the carrot video and remember "what [the] victim went through."  The prosecutor also asked whether it was "so unbelievable that [the victim] was scared to disclose the [sexual] abuse when that's what her daily life was?"  And, the prosecutor explained that the victim's memory loss made sense because there were only three incidents[3] of sexual assault but daily incidents of physical abuse.

---

[3] S.Y. testified that, when she was six years old, there were a few times when she would get out of the bathtub and defendant would ask to check her bottom "to make sure [she] cleaned it right."  He told her to bend over and look away, then she felt something "hard" and "wet" on her behind.  These incidents were not charged;

¶ 42    On this record, we conclude the error in admitting the evidence as res gestae was not harmless. Reading through the trial transcript, one might easily forget that defendant was on trial for sexual assault and believe he was also on trial for charges of child abuse. The prosecutor used this evidence to paint the defendant in a bad light and appeal to the jury's emotions. Thus, the physical abuse evidence "served the prohibited purpose of demonstrating the defendant's purported threatening and violent bad character," and nothing more. *Id.* at ¶ 73 (Hart, J., specially concurring).

¶ 43    Further, we conclude there is a reasonable probability that the graphic, extensive, and detailed physical abuse evidence contributed to defendant's conviction. And although the court gave a limiting instruction,[4] it merely said that the evidence could be used for "context." It did not instruct the jury that defendant could

---

however, they were listed on the verdict forms as an "additional act" for the jury's consideration of whether defendant committed the charged conduct as part of a pattern of abuse.

[4] We recognize that no limiting instruction is required when evidence is admitted as res gestae. *People v. Griffiths*, 251 P.3d 462, 467 (Colo. App. 2010). Nevertheless, because the trial court provided one, it is appropriate to consider whether the instruction may have mitigated any error. *See People v. Thomeczek*, 284 P.3d 110, 114-15 (Colo. App. 2011).

not be convicted because he was physically abusive, and it did not limit the use of the evidence to explain why S.Y. did not report the sexual assaults. Because the jury's consideration of the res gestae was not limited to a specific purpose, the prosecutor repeatedly encouraged it to keep the physical abuse evidence at the top of its mind when deliberating on whether defendant was guilty of the charged sexual assaults. Thus, the limiting instruction itself was deficient and did nothing to mitigate the harm to defendant of the admission of the res gestae evidence. *See Yusem*, 210 P.3d at 470 ("Additionally, the jury instructions did nothing to limit the prejudice and arguably served only to confuse the jury and permit them to rely on the inference of bad character.").

¶ 44 The People make the alternative argument that, even if the evidence was not admissible as res gestae, its admission was harmless because it could have been admitted under CRE 404(b). Before admitting Rule 404(b) evidence, a trial court must make pertinent findings regarding the admissibility of the other bad act evidence. *See People v. Garner*, 806 P.2d 366, 372 n.4 (Colo. 1991); *Spoto*, 795 P.2d at 1318. Failure to do so is not reversible error if the record supports the trial court's admission of the evidence.

*People v. Martinez*, 36 P.3d 154, 158 (Colo. App. 2001).  However, the trial court here did not exercise its discretion in this context, so we are not equipped on this record to determine whether the evidence would have been admissible on these grounds.

¶ 45    In addition, had the trial court admitted this evidence under Rule 404(b), the required limiting instruction would have identified the particular evidentiary purpose for which the evidence was admitted, rather than merely stating that the evidence was "for context."

¶ 46    Thus, although we conclude that the admission of the evidence as res gestae was not harmless, we express no opinion as to whether on retrial the physical abuse evidence would be admissible under Rule 404(b).

¶ 47    Because we cannot say with fair assurance that the error in admitting this evidence did not substantially influence the verdict, we reverse defendant's convictions and remand the case for a new trial in which this evidence should be excluded.

## III.    Other Contentions

¶ 48    Because we anticipate that these issues may arise on remand, we briefly address defendant's contentions that the trial court

erroneously admitted expert testimony about offender grooming behaviors and that the prosecutor committed misconduct by arguing that defendant "groomed the jury."

### A. Expert Testimony on Grooming

¶ 49 Kandy Moore testified for the prosecution as a blind expert.[5] The defense raised objections pretrial about the reliability and relevance of her testimony and maintained a continuing objection to her trial testimony.

¶ 50 The prosecution offered Moore as an expert in several areas, including the "behaviors and dynamics of adult perpetrators of sexual abuse, including grooming and the use of intimidation and isolation." Without making specific findings or providing a detailed explanation, the court found "that she meets the qualifications under [CRE] 702 and also under [CRE] 403, and she is accepted as an expert and may render opinions in the areas of expertise."

---

[5] "A 'blind' or 'cold' expert knows little or nothing about the facts of a particular case, often has not met the victim, and has not performed any forensic or psychological examination of the victim (or the defendant)." *People v. Cooper*, 2019 COA 21, ¶ 2 (*cert. granted* Mar. 2, 2020) (citation omitted).

¶ 51    During her direct examination, Moore described her professional experience, including the years she had spent counseling convicted sex offenders and adults who had been sexually assaulted as children.

¶ 52    Moore then testified about grooming.[6]  She explained that grooming is "the offender's plan to keep the child quiet so that the child doesn't tell what's going on and to fool all the rest of us about what's really happening."  She testified that "[o]ffenders groom the child victim, the parents of the child, they groom all of us as a community.  Even after they're convicted, they try to groom probation and treatment providers.  It's just their way of life for them."  She continued, explaining that grooming "tends to be pretty pleasurable . . . things like bribing, buying things for the victim to keep them quiet, giving them special privileges, treating them specially."  But it can also be "very intimidating.  It can be very

---

[6] Significantly, part of Moore's testimony about grooming occurred before she was offered by the prosecution, and accepted by the trial court, as an expert.  The court noted this error later, outside the jury's presence, commenting that this testimony was "frankly . . . expert opinion before [Moore] was qualified."

harsh and very mean," including "punishing the child." The prosecutor labeled these latter activities "negative grooming."

¶ 53     A trial court has "broad discretion to determine the admissibility of expert testimony." *People v. Ornelas-Licano*, 2020 COA 62, ¶ 42 (quoting *Golob v. People*, 180 P.3d 1006, 1011 (Colo. 2008)). In exercising that discretion, the court must act as a "gatekeep[er]" and assure that specialized testimony is "reliable, relevant, and helpful to the jury." *People v. Prieto*, 124 P.3d 842, 849 (Colo. App. 2005). In furtherance of this duty, our supreme court has consistently required that trial courts

> admitting evidence pursuant to CRE
> 702 . . . determine and make specific findings
> on the record, not only as to the reliability of
> the scientific principles upon which the expert
> testimony is based, . . . but also the usefulness
> of such testimony to the jury, including
> specific findings with regard to the court's
> obligation pursuant to CRE 403 . . . .

*Ruibal v. People*, 2018 CO 93, ¶ 12 (citing *People v. Shreck*, 22 P.3d 68, 70, 77-78 (Colo. 2001)). This requirement has been "unwavering." *Id.* at ¶ 13.

¶ 54     Here, the court's reference in its ruling to Rules 702 and 403 indicates its "awareness of the applicable standard[s]," but "the

26

requirement for specific findings is not satisfied by this inference alone." *Id.* at ¶ 14. As gatekeeper, the trial court needed to make specific findings on the record about the reliability, relevance, and usefulness of Moore's testimony, including the concept of "negative grooming," before exercising its discretion whether to admit it. *See id.* at ¶ 12; *id.* at ¶ 14 ("In light of the broad range of expertise governed by the rule and the necessarily non-specific nature of the factors governing the reliability, relevance, and incremental probativeness of expert opinion in any given case, the requirement for specific findings is imposed as a means of ensuring meaningful review of this broadly discretionary decision.").

¶ 55    Accordingly, should the prosecution seek to admit this expert testimony in defendant's new trial, the trial court shall make specific findings on the record regarding the relevance and reliability of the evidence before deciding whether to admit it.

## B.    Prosecutorial Misconduct

¶ 56    Finally, we address the novel issue of the "groomed jury." Throughout closing argument, the prosecutor adopted a grooming theme. He began by reminding the jury of Moore's testimony and then went one step further and argued that defendant, his counsel,

and the entire defense that the jury had witnessed throughout the trial was merely an attempt to groom the jury. Defense counsel objected. The trial court forbade the prosecutor from arguing that *defense counsel* had groomed the jury, but it permitted the prosecutor to continue arguing that *defendant* had groomed the jury.

¶ 57 We evaluate a claim of improper closing argument as a whole and in light of the entire record. *People v. Knight*, 167 P.3d 147, 156 (Colo. App. 2006).

¶ 58 "[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Here, the prosecutor's challenged comments regarding defendant grooming the jury were repeated blows that violated defendant's right to due process and a fair trial by an impartial jury. *See Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 59 By taking the expert's grooming testimony and arguing that it applied directly to the jury, the prosecutor crossed the line from permissible commentary on the evidence to impermissible commentary not only about defendant's character, but also about

28

the jury. *See People v. Serra*, 2015 COA 130, ¶ 88 (condemning arguments implying the defendant has a "bad character"). This argument appealed to the passions and prejudices of the jury, encouraging it to view defendant in a negative and manipulative light. *See Domingo-Gomez*, 125 P.3d at 1048-49. In a sense, it is a type of "golden rule" argument that put the jury on similar footing with S.Y.: both victims of defendant's control and grooming. These arguments are improper because they "encourage the jury to decide the case based on personal interest and emotion rather than on a rational assessment of the evidence." *People v. Munsey*, 232 P.3d 113, 123 (Colo. App. 2009). Essentially, the prosecutor argued that, if the jury believed defendant, it was only because he had succeeded in grooming them. Who among us, after all, wants to be accused of being controlled and groomed by a criminal defendant on trial?

¶ 60    These comments were frequent and improper. On remand, the trial court should not permit the "groomed jury" comments.

IV.    Conclusion

¶ 61    We reverse defendant's convictions and remand for a new trial.

JUDGE TOW and JUDGE PAWAR concur.